## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.               ) | No. 2:16-cr-00156-NT |
| ) | |
| LUCAS HEINDENSTROM       ) | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its counsel, Halsey B. Frank, United States Attorney for the District of Maine, and Jamie R. Guerrette, Assistant United States Attorney, respectfully submits the following memorandum in aid of sentencing on the issue of whether, and to what extent, the Court can properly depart and/or vary from the sentencing guidelines based on the offense conduct causing/contributing to a fatal overdose.

### STATEMENT OF THE CASE

On January 27, 2017, the defendant appeared in the U.S. District Court, District of Maine, and entered a guilty plea to a single count Indictment charging distribution of fentanyl on March 30, 2016. ECF Nos. 38, 61. Defendant tendered his plea pursuant to a plea agreement. ECF No. 60. Therein, the parties agreed to a binding recommendation that "…a sentence no greater than 96 months provides the appropriate total punishment for the offense of conviction." *Id*., p. 2. It also contained an appeal waiver of 48 months. *Id*. Based on the circumstances of the underlying conduct, the Court did not immediately adjudicate the defendant guilty and reserved ruling on whether to accept the binding plea agreement. ECF No. 61.

On March 31, 2016, the York, Maine police department responded to an unattended death that they suspected to be an overdose. *Pros. Version*, p. 1; *PSR*, ¶ 8. A search of the decedent's bedroom produced a small baggie of suspected heroin, later determined to be fentanyl, and drug

paraphernalia consistent with intravenous drug use. *Id*. The medical examiner later determined the cause of death to be "acute intoxication due to the combined effects of ethanol, methanol and fentanyl." *PSR*, ¶ 8.

Investigators secured the decedent's cell phone and observed text messages that documented the fact that the decedent had procured the fentanyl from the defendant the previous evening. *Pros. Version*, p. 1; *PSR*, ¶ 9. In fact, the defendant sent the decedent a text message that referred to the substance as fentanyl – "Its gatta be the fet." *PSR*, ¶ 9. Defendant does not dispute that he distributed fentanyl to the decedent. *Pros. Version*, p. 2; *Sentencing Memo*, pp. 2, 5 ("I told him it must be the fet aka fentanyl").

On April 1, 2016, investigators used the decedent's cell phone to communicate with the defendant under the guise of consummating an additional drug transaction. *Pros. Version*, p. 2; *PSR*, ¶ 10. When the defendant arrived at the purported meet location, investigators took him into custody. *Id*. In a post-arrest interview, Defendant admitted that he distributed the drugs to the decedent on March 30, 2016. *Id*.

Authorities sent a sample of the decedent's blood to NMS Labs in Willow Grove, Pennsylvania, for further testing. NMS Labs issued a Toxicology Report indicating the following positive findings: (1) the presence of ethanol; (2) the presence of methanol in the reported amount of 120mg/dl; and (3), the presence of fentanyl in the reported amount of 5.7 ng/mL. *See Government Exhibit #1*, p. 1. The lab also detected the presence of Norfentanyl (fentanyl metabolite). *Id*.

According to the comment section of the Toxicology Report, "[f]entanyl is a DEA Schedule II synthetic morphine substitute anesthetic/analgesic…[and] is reported to be 80 to 200

times as potent as morphine and has a rapid onset of action as well as addictive properties." *Id*., p. 3.  The comment section further observed, "[s]igns associated with fentanyl toxicity include severe respiratory depression, seizures, hypotension, coma and death." *Id*.  Lastly, the comment section documented that "[i]n fatalities from fentanyl, blood concentrations are variable and have been reported as low as 3 ng/mL.  *Id*.

The comment section also discussed the toxicity of methanol.  Specifically, it related, "most of the toxic effects of methanol ingestion are attributable to its metabolic product formic acid." *Id*.  It further stated, "[s]igns and symptoms associated with methanol ingestion include severe metabolic acidosis and CNS, ocular and gastrointestinal disturbances." *Id*.  Lastly, it reported, "[f]atalities in twenty untreated patients have been reported to occur at blood concentrations between 20 – 630 mg/dL (mean, 190 mg/dL); however, blood levels of methanol alone may not be reliable since formic acid is the more toxic agent." *Id*.

Based on drug quantity, the PSR determined that the defendant's base offense level is 12 and his guideline range is 8-14 months.  *PSR*, ¶¶ 17, 54.  The PSR identified the unique facts and circumstances of this case as a potential basis for an upward departure and variance.  *PSR*, ¶¶ 68, 70.

**GOVERNMENT'S POSITION**

### I. The Court Can Properly Depart Upward Because Death Resulted From an Action That Defendant Set Into Motion

Pursuant to the guidelines, "[if] death resulted, the court may increase the sentence above the authorized guideline range."  U.S.S.G. § 5K2.1.  The Court may consider several factors in deciding whether to depart, including: the defendant's state of mind; the degree of planning or

preparation; whether multiple deaths resulted; and, the means by which life was taken. *Id*. The extent of any departure is guided by "…the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction…already reflects the risk of personal injury." "In determining whether the government has carried the devoir of persuasion at sentencing, the district court must employ a preponderance of the evidence standard." *United States v. Pacheco*, 489 F.3d 40, 45 (1st Cir. 2007) (holding that the court did not err in determining that injuries were attributable to an overdose of ketamine supplied by defendant five and a half weeks earlier notwithstanding the possibility that the victim may have had other sources of ketamine and also had heroin in his system).

A few courts have held that "§ 5K2.1 departures [must] be supported by findings that death was intentionally or knowingly risked." *United States v. White*, 979 F.2d 539, 545 (7th Cir. 1992); *United States v. Williams*, 51 F.3d 1004, 1012 (11th Cir. 1995) (holding that "a factual finding that death was intentionally or knowingly risked is sufficient"). Setting aside the question of whether you can distribute fentanyl without intentionally and knowingly risking the death of your customer, in the current environment, other courts, including the First Circuit, have taken a more lenient approach. "We see no basis for foreclosing departure under § 5K2.1 when a defendant puts into motion a chain of events that risks serious injury or death, even when an intent to harm is entirely absent and the defendant was not directly responsible for the death." *United States v. Diaz*, 285 F.3d 92, 101 (1st Cir. 2002); *United States v. Nossan*, 647 F.3d 822, 827 (8th Cir. 2011). Indeed, "[u]nintended consequences are often the result of reckless behavior…." *Diaz*, 285 F.3d at 101. "A departure under [§ 5K2.1] is permitted 'even when the

defendant is not the direct cause of the victim's death.'" *Pacheco*, 489 F.3d at 46, citing *United States v. Sanchez*, 354 F.3d 70, 80-81 (1st Cir. 2004).

In *Pacheco*, the Court concluded "…that to warrant an upward departure in this case, the government was not required to show that ketamine was either the sole or the direct cause of [the] injuries; it had to show only that there was a but-for causal connection between ketamine and those injuries." *Pacheco*, 489 F.3d at 46. It then determined that the record supported "…an inference that ketamine was at least a concurrent cause of the injuries," adding "[t]he chronology of events supports the view that [the] injuries were causally connected to his use of ketamine." *Id*. at 47. The Court affirmed that "…the totality of the evidence was sufficient to ground an inference that ketamine, either by itself or in combination with heroin, played a meaningful role in the overdose (and thus, in the incidence of the injuries)." *Id*.

Under the above First Circuit precedent, the facts at issue here would unquestionably implicate the upward departure provision, especially when analyzed pursuant to a preponderance of the evidence standard. Defendant does not dispute that he distributed the fentanyl that the decedent ingested hours before his death. According to the Toxicology Report, the fentanyl levels in the decedent's blood were nearly double the amount where studies have documented fatal overdoses to occur. To the contrary, the methanol levels, the presence of which is admittedly unexplained in this case, were below the "mean" (average) in the limited pool of cases that have involved accidental death. Clearly, fentanyl played a significant role. At the very least, it acted in concert with the other substances to cause death. Moreover, the headlines are replete with stories of how the emergence of fentanyl has caused a nationwide spike in overdose deaths.

Defendant avers that this precedent is in conflict with a more recent opinion of the Supreme Court. In *Burrage v. United States*, the Supreme Court held that, "…at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *United States v. Burrage*, 571 U.S. 204, 218-19 (2014). Using an illustration, the Court explained that the decision did not foreclose the possibility that two independently sufficient causes of death could implicate the statutory minimum mandatory sentence of twenty years. As it qualified in its opinion, "…there was no evidence…that [the decedent's] heroin was an independently sufficient cause of his death, [and] no expert was prepared to say that [the decedent] would have died from the heroin use alone." *Burrage,* 571 U.S. at 215.

That notwithstanding, the defendant's reliance on *Burrage* is misplaced. *Burrage* involved a statutory death enhancement that was an element of the offense, not relevant conduct pursuant to the guidelines. *See United States v. Robinson*, 732 Fed.Appx. 405 (6th Cir. 2018) (distinguishing offense conduct from relevant conduct post-*Burrage*). Unlike statutory enhancements that mandate higher penalties, sentencing enhancements that merely increase the advisory guideline range do not require jury findings based upon proof beyond a reasonable doubt. *Id*. Section 5K2.1 is much broader and, as evident from the cases analyzing the provision, encompasses a whole host of conduct that has nothing to do with drug trafficking.

In support of his argument, the defendant cites a Tenth Circuit opinion, which correlated a guideline provision with the relevant statute. Specifically, the Tenth Circuit held that "…U.S.S.G. § 2D1.1(a)(2) applies only when the second prong of the statute, i.e. that death or

6

serious bodily injury results, is also part of the crime of conviction."[1] *United States v. Greenough*, 669 F.3d 567, 575 (10th Cir. 2012). Contrary to Defendant's argument, this was a narrow holding. The language of U.S.S.G. § 2D1.1(a)(2) mandates a base offense level of 38 when the "…<u>offense of conviction establishes</u> that death or serious bodily injury resulted from the use of the substance." U.S.S.G. § 2D1.1(a)(2) (emphasis added). Unlike § 5K2.1, guideline § 2D1.1(a)(2) is tethered to the offense of conviction and does not include relevant conduct. *See e.g. United States v. Lawler*, 818 F.3d 281, 285 (7th Cir. 2016) (observing that Courts are free, "…when determining a defendant's ultimate sentence, to consider the fact that death resulted" pursuant to 18 U.S.C. § 3553(a)(1) (directing courts to consider the "nature and circumstances of the offense"), 18 U.S.C. § 3553(a)(5) (to consider policy statements) and/or U.S.S.G. § 5K2.1).

Indeed, in an opinion that followed *Burrage*, the Sixth Circuit concluded that there was no error in imposing an upward departure pursuant to § 5K2.1 even after the sentencing court vacated the conviction and the government dismissed the charge because of the Supreme Court decision. *United States v. Salyers*, 661 Fed.Appx. 862, 865 (6th Cir. 2016); *see also United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."). While the Court noted that the defendant did not challenge the factual finding that he was responsible "in some degree" for the death, the Court added, "even if [he] were to make this challenge, we would not hold the

---

[1] Notwithstanding its ruling, the Court concluded that the information in the PSR was sufficient to demonstrate that Greenough supplied the heroin that caused Reitz's death. This included testimony that Greenough supplied heroin to Reitz, his death was due to "multiple drug intoxication," metabolized heroin was found in his blood and urine, he was found with a fresh needle mark, and there were syringes of heroin on his table. *Id.*

7

district court's finding to be clearly erroneous because there is ample support in the record to find by a preponderance of the evidence that [the] death resulted from [his] conduct." *Salyers*, 661 Fed.Appx. at 866.  This case involved facts and circumstances that did not pass statutory "but-for" muster, pursuant to *Burrage*, but satisfied the standard for a § 5K2.1 upward departure.  Similarly, the facts and circumstances outlined in the pre-sentence report establish by a preponderance of the evidence that the defendant's distribution of fentanyl to the decedent caused his death.

## II.     Even if the Court Concludes That it Cannot Depart Upward Because of Death, an Upward Variance is Nevertheless Warranted

"Variant sentences, [in contrast to departures], result from a court's consideration of the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Nelson*, 793 F.3d 202, 206 (1st Cir. 2015).  "The procedural requirements for variances are more lenient than those for departures…." *Id*.  The First Circuit has explained:

> "Appellate review of federal criminal sentences is characterized by a frank recognition of the substantial discretion vested in a sentencing court.  Although the advisory guidelines are the starting point and the initial benchmark, a sentencing judge may draw upon [her] familiarity with a case, weigh the factors enumerated in 18 U.S.C. § 3553(a), and custom-tailor an appropriate sentence.  It follows that a sentencing court may not mechanically assume that the GSR frames the boundaries of a reasonable sentence in every case.  Rather, the court must take a flexible, case-by-case approach: once the GSR is properly calculated, sentencing becomes a judgment call involving an intricate array of factors."

*United States v. Flores-Machicote*, 706 F.3d 16, 20-21 (1st Cir. 2013) (internal citations and quotation marks omitted).

Clearly, the Court has discretion to vary from the guideline range based on the nature and circumstances of the offense.  The First Circuit has observed that "[t]he court's reasons for deviation should typically be rooted either in the nature and circumstances of the offense or the

8

characteristics of the offender…." *Nelson*, 793 F.3d at 207, citing *United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008).  An appellate court will review a sentencing court's variance from the guidelines pursuant to a reasonableness inquiry and for an abuse of discretion.  "Although a major deviation must be supported by a more significant justification than a minor one, no 'extraordinary' circumstance [need exist] to justify a sentence outside the Guidelines range." *Id*. Ultimately, "[t]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." *Id*.

Here, the defendant's distribution of fentanyl either directly caused, or at an absolute minimum, contributed to, the tragic overdose death of his acquaintance.  Because his guideline range does not account for this critical piece of the offense conduct, the facts and circumstances of this case are ripe for the imposition of an upward variance. *See e.g. United States v. Lake*, 613 Fed.Appx. 700 (10th Cir. 2015) (affirming upward variance of 59 months imprisonment for distribution of heroin that resulted in death of friend); *United States v. Goosen*, 723 Fed.Appx. 608 (10th Cir. 2018) (upward variance to 90 months procedurally and substantively reasonable); *United States v. Prince*, 2018 WL 4362214, * 4 (6th Cir. 2018) (affirming upward departure/variance on basis that district court would have nevertheless varied to account for an overdose if not permitted to depart pursuant to § 5K2.2); *United States v. Ford*, 724 Fed.Appx. 428, 435-36 (6th Cir. 2018) (affirming an upward variance from 46 months to 120 months based, in part, on the severity of the opiate crisis and the defendant's role in the "death, overdoses and other suffering" generally associated with that activity).

## CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court consider, either by upward departure or variance, the fact that the defendant's distribution of fentanyl resulted in a death. The Government will present its sentencing recommendations based on the factors enumerated in 18 U.S.C. § 3553 at the sentencing hearing.

Dated: November 20, 2018

                                            Respectfully submitted,

                                            HALSEY B. FRANK
                                            UNITED STATES ATTORNEY


                                            /s/ Jamie R. Guerrette
                                            Assistant United States Attorney
                                            United States Attorney's Office
                                            100 Middle Street, 6th Floor
                                            Portland, Maine 04101
                                            (207) 780-3257

# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2018, I filed this Government's Sentencing Memorandum with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Robert Andrews, Esq.

                                                     HALSEY B. FRANK
                                                     UNITED STATES ATTORNEY

                                                     /s/ Jamie R. Guerrette
                                                     Assistant United States Attorney
                                                     United States Attorney's Office
                                                     100 Middle Street, 6th Floor
                                                     Portland, ME  04101
                                                     (207) 780-3257